UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EDWARD ARNOLD,

                              Plaintiff,

              -against-

SUPPORT ENFORCEMENT SERVICES;
NAMED AND UNNAMED OFFICIALS
ACTION UNDER COLOR OF STATE LAW,

                              Defendants.

1:24-CV-7228 (LLS)

ORDER OF DISMISSAL
WITH LEAVE TO REPLEAD

LOUIS L. STANTON, United States District Judge:

Plaintiff Edward Arnold, of New Britain, Connecticut, who is appearing *pro se*, filed this

action invoking the court's original federal question jurisdiction, initially asserting, in his

original complaint, claims of violations of his federal constitutional rights, the "Federal Reserve

Act Section 29 Civil Money Penalties Tier 1, 2, 3, [and the] Cestui Que Vie Act [of] 1666."

(ECF 1, at 2.) He thereafter filed a motion for leave to file an amended complaint and has

attached to it a proposed amended complaint. (ECF 6.) While, at this stage of the litigation of this

action, Plaintiff need not seek the Court's permission to file an amended complaint, *see* Fed. R.

Civ. P. 15(a)(1), in light of Plaintiff's *pro se* status, the Court grants Plaintiff's motion and

regards Plaintiff's proposed amended complaint (ECF 6, at 3-9) as the actual amended complaint

and, thus, the operative pleading for this action.

In his amended complaint, Plaintiff names as defendants: (1) "Support Enforcement

Services," which the Court understands to be the Office of Child Support Services ("OCSS"), a

subdivision of the New York City Department of Social Services's Human Resources

Administration; and (2) "Named and Unnamed Officials Acting Under Color of State Law,"

which the Court understands to be unidentified employees of OCSS. (*Id.* at 3.) Plaintiff invokes

the Court's original federal question jurisdiction, asserting claims of violations of his federal constitutional rights as well as claims under the Fair Credit Reporting Act ("FCRA").

In his amended complaint, Plaintiff seeks the following relief: (1) a declaration that the defendants' "enforcement actions [are] improper due to procedural violations"; (2) vacatur of "all default judgments entered against Plaintiff arising from defective service and lack of notice"; (3) a declaration that OCSS's "arrears calculations [are] improper and [an order directing] remov[al] [of] all unverified or unlawful financial obligations"; (4) an order directing the defendants "to produce verified proof of service, including the name and signature of the individual who allegedly accepted service at Plaintiff's former residence"; (5) an order prohibiting "further enforcement and reporting of the invalid support order and associated arrears"; (6) a declaration "that Plaintiff's Fourteenth Amendment rights were violated"; (7) damages; (8) an order directing "a complete audit and restitution of all funds unlawfully seized thorough wage garnishment, tax intercepts, and financial levies"; (9) vacatur of "the false arrears balance in its entirety, [and a] declar[ation] [that] the underlying judgment [is] void for want of jurisdiction, lack of verified obligation, and constitutional violations"; (10) an "affirm[ation] [of] Plaintiff's right to financial sovereignty and recogni[tion] [that] the funds taken from a living man absent due process are recoverable as lawful money, entitled to restitution and constitutional protection"; (11) a declaration "that Plaintiff is entitled to rebuild his life free from wrongful enforcement and punitive reporting," and declaratory and injunctive relief that the Court deems necessary "to restore [Plaintiff's] dignity, peace, and the opportunity to reunite with [his] family"; and (12) any other relief the Court deems just and proper. (*Id.* at 7-8.)

The Court construes Plaintiff's amended complaint as asserting claims of violations of the federal constitutional rights under 42 U.S.C. § 1983, claims under the FCRA, and claims under state law.[1] By order dated October 2, 2024, the court granted Plaintiff's request to proceed *in forma pauperis* ("IFP"), that is, without prepayment of fees. For the reasons set forth below, the Court dismisses this action, but grants Plaintiff 30 days' leave to replead specified claims in a second amended complaint.[2]

## STANDARD OF REVIEW

The Court must dismiss an IFP complaint, or portion thereof, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills,* 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted, emphasis in original). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

---

[1] The Court understands Plaintiff's claims under state law as alternatively asserted under the court's diversity jurisdiction and its supplemental jurisdiction.

[2] Attached to Plaintiff's motion for leave to file an amended complaint and his proposed amended complaint is a "motion for audit and restitution of seized funds." (ECF 6, at 10-11.) For the reasons discussed in this order, that motion is denied.

The Supreme Court of the United States has held that, under Rule 8, a complaint must include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the court to draw the inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Id.* But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Id.* (citing *Twombly*, 550 U.S. at 555). After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible—not merely possible—that the pleader is entitled to relief. *Id.* at 679.

## BACKGROUND

Plaintiff alleges the following in his amended complaint: In or about 2001, a New York State court entered a default judgment against Plaintiff; in that default judgment, the state court held that Plaintiff owed child support. This default judgment was entered "without lawful service, notice, or opportunity to be heard." (ECF 6, at 4.) Plaintiff had never been served with "a summons, paternity petition, or financial disclosure request prior to entry of the default judgment." (*Id.*) Service had been attempted at a Bronx, New York, location where Plaintiff had previously resided, but that he had vacated in 2000 "due to housing instability" and where he "did not reside . . . at the time of alleged service." (*Id.*) Almost immediately, Plaintiff's wages were garnished to pay the child support debt that the state court determined that he owed. In 2005 and in 2006, "Plaintiff appeared in person . . . at the Manhattan Child Support Office to contest the matter, explaining improper service and requesting an investigation and audit, which were denied." (*Id.*) Plaintiff then "became subject to dual garnishments from both New York and

Florida, despite not receiving clarification or reconciliation of his legal or financial obligations in either state." (*Id.*)

As a result of this, Plaintiff has suffered "job loss, housing insecurity, and financial hardship [for] over two decades." (*Id.*) In 2012, Plaintiff was threatened with arrest and he "voluntarily appeared in court to avoid further escalation." (*Id.*) Between 2016 and 2017, Plaintiff appeared before New York Family Court, Bronx County, Support Magistrate Paul Ryneski in order "to resolve the matter," but "[d]espite providing court records and factual background, Plaintiff was denied relief and the matter was dismissed without due consideration." (*Id.*)

"Plaintiff reopened the case in December 2023[,] and appeared before [what appears to be another New York Family Court Support Magistrate], who acknowledged defects in service and deferred further action to attempt contact with the custodial [parent]." (*Id.* at 5.) In February 2024, and again in June 2024, "Plaintiff reappeared in court, bringing a witness. [The abovementioned Support Magistrate] deferred action again and did not resolve jurisdictional defects or the question of [child support] arrears." (*Id.*) Plaintiff asserts that "there is no verified record of hardship or financial injury to the custodial [parent] at the time of judgment. No testimonial record or documented expense report was presented." (*Id.*)

Plaintiff further alleges that, in 2015, his bank (Bank of America) placed on lien on his checking account. "After a formal complaint to the Albany [Support Enforcement Services ("SES")] office, . . . .[that office] investigated the matter and removed the lien." (*Id.*) That office also "cleared the erroneous debt from Plaintiff's credit report." (*Id.*) In 2020, however, Plaintiff's bank "again levied Plaintiff's account, this time freezing and draining his trading account. By the time the levy was reversed, Plaintiff's account showed an overdraft in excess of $121,000." (*Id.*)

5

Plaintiff made repeated requests to his bank and to SES to provide the "name or signature of the party who authorized the 2020 levy. No underlying court order or verified claim was shown." (*Id.*) Plaintiff states that "SES's arrears calculations were never verified, and [he] was not afforded an opportunity to contest alleged obligations or present financial records in accordance with due process." (*Id.*) He further states that "[e]nforcement actions, including garnishments, credit damage, and license suspensions, occurred without proper legal foundation or meaningful review, violating [his] rights under the Constitution and federal law." (*Id.* at 6.)

## DISCUSSION

**A.      Domestic relations abstention doctrine**

To the extent that Plaintiff asks this court, under its federal question jurisdiction, to determine that he does not have a current child support obligation, including any child support arrears, the Court must dismiss those claims. Federal district courts must abstain from exercising federal question jurisdiction over claims involving domestic relations issues, so long as those claims may be fully and fairly determined in the state courts. *See Am. Airlines, Inc. v. Block*, 905 F.2d 12, 14 (2d Cir. 1990). For example, a federal district court must abstain from exercising its federal question jurisdiction over claims in which it is "asked to grant a divorce or annulment, determine support payments, or award custody of a child." *Id.* (internal quotation marks and citation omitted); *see also Deem v. DeMella-Deem*, 941 F.3d 618, 621 (2d Cir. 2019) ("[T]he domestic relations *abstention* doctrine articulated in *American Airlines* [applies with respect to a federal court's federal question jurisdiction]. And . . . *American Airlines* remains good law in this Circuit." (emphasis in original)). Courts have held that this abstention doctrine applies "when a federal district court is asked, under its federal question jurisdiction, to determine child support or modify a previously determined child support amount set by a state court." *Goodwin v. Bronx Family Court*, No. 1:24-CV-4103, 2024 WL 4168348, at *4 (S.D.N.Y. Sept. 9, 2024) (citing

cases); *see also Williams v. Scott*, No. 24-CV-4719, 2025 WL 1371664, at *3-4 (E.D.N.Y. May

12, 2025) (quoting *Goodwin*, 2024 WL 4168348, at *4, and (citing cases)). "Indeed, [d]omestic

relations is an area of law that federal courts and Congress leave almost exclusively to state law

and state courts. This exception also extends to child support determinations and the enforcement

thereof." *Williams v. Lafler*, No. 25-CV-4263, 2025 WL 2576678, at *3 (E.D.N.Y. Sept. 5, 2025)

(citations and internal quotation marks omitted)); *Haynie v. New York State Child Support*

*Enforcement Agency*, No. 1:25-CV-0306, 2025 WL 2205987, at *3 (N.D.N.Y. Aug. 4, 2025)

("[I]t has been held that federal courts should abstain from matters involving the enforcement of

domestic relations decisions." (citing cases)), *appeal pending*, No. 25-2134 (2d Cir.).

   Plaintiff has alleged no facts showing that he cannot fully and fairly litigate the issue of

whether he has a current child support obligation, including any child support arrears, within the

courts of the State of New York. Thus, to the extent that Plaintiff asks this Court to determine

that he does not have a child support obligation, including any child support arrears, the Court

dismisses any such claims for relief under federal law pursuant to the domestic relations

abstention doctrine.

**B.     Domestic relations exception**

   The Court must also dismiss Plaintiff's claims under state law, to the extent that they are

raised under the court's diversity jurisdiction, in which he asks this Court to determine that he

does not have a current child support obligation, including any child support arrears, under to the

domestic relations exception to the court's diversity jurisdiction. In *Ankenbrandt v. Richards*, the

Supreme Court of the United States reaffirmed the continued validity of this exception to a

federal district court's diversity jurisdiction, stating that this exception divests federal courts of

jurisdiction "to issue divorce, alimony and child custody decrees." 504 U.S. 689, 703 (1992).

Thus, "[t]he Supreme Court has made clear that [that] exception would prevent a federal court

sitting in diversity from deciding core issues of family law such as issuing a divorce, alimony, or child support decrees." *United States v. Nichols*, 928 F. Supp. 302, 317 (S.D.N.Y. 1996) (citing *Ankenbrandt*, 504 U.S. at 703 and n.6), *aff'd*, 113 F.3d 1230 (2d Cir. 1997) (unpublished opinion). This exception applies to the court's diversity jurisdiction to consider a civil action in which the Court is asked to determine child support arrears. *See Lions v. New York State Office of Child Support Enforcement*, No. 1:24-CV-7181, 2025 WL 81421, at *9 (S.D.N.Y. Jan. 10, 2025) ("[T]he Court lacks diversity jurisdiction to review Plaintiff's family court proceeding to the extent that the Complaint can be construed to assert claims seeking modification of the child support order."); *see also Kelley v. Westchester Cnty. Family Court Archives of Child/Spousal Support Re: Charles E. Kelley (Deceased Defendant)*, No. 1:23-CV-7519, 2023 WL 8097038, at *3 (S.D.N.Y. Nov. 20, 2023) ("Even if the parties were diverse, and the amount in controversy exceeded $75,000, the Court cannot exercise jurisdiction of Plaintiff's claims regarding her support arrears under the domestic relations exception recognized by the Supreme Court in *Ankenbrandt*. . . . Plaintiff's claims regarding her support payments fall squarely within the domestic relations exception to the Court's diversity jurisdiction; she asks this Court to order Defendants to pay her the arrears she alleges she is owed."). The Court therefore dismisses, under the domestic relations exception to the court's diversity jurisdiction, Plaintiff's claims under state law, raised under that jurisdiction, in which Plaintiff asks this Court to determine that he does not have a current child support obligation, including any child support arrears.

## C.    The *Younger* abstention doctrine

To the extent that Plaintiff asks this Court to intervene in any child support proceedings that are pending in a state court, such as the New York Family Court, Bronx County, in which Plaintiff is a party, the Court must dismiss those claims. In *Younger v. Harris*, 401 U.S. 37 (1971), the Supreme Court of the United States held that a federal court may not enjoin a

pending state criminal proceeding in the absence of special circumstances suggesting bad faith, harassment, or irreparable injury that is both serious and immediate. *See Gibson v. Berryhill*, 411 U.S. 564, 573-74 (1973) (citing *Younger*, 404 U.S. 37). Application of this *Younger* abstention doctrine has been extended to the three following categories of state court proceedings: (1) state criminal prosecutions; (2) civil enforcement proceedings that are "akin to criminal prosecutions"; and (3) civil proceedings "that implicate a State's interest in enforcing the orders and judgments of its courts." *Sprint Commc'n, Inc. v. Jacobs*, 571 U.S. 69, 72-73 (2013) ("*Sprint*"). It applies to claims for injunctive relief and declaratory relief sought, in the federal court, that would cause that court to intervene in any of those types of state court proceedings. *See Kirschner v. Klemons*, 225 F.3d 227, 235 (2d Cir. 2000). Courts have held that pending state court child support proceedings involve at least one of the circumstances mentioned in *Sprint* in which the *Younger* abstention doctrine should be applied. *See, e.g.*, *Porter v. Onondaga Cnty. Family Court*, 5:25-CV-0881, 2025 WL 2612819, at *2 (N.D.N.Y. Aug. 21, 2025) ("State court child custody and child support proceedings involve at least one of the circumstances mentioned in *Sprint* in which the *Younger* abstention doctrine should be applied"); *Hart v. Office of the Attorney General – Child Support Div.*, No. 1:24-CV-3123, 2024 WL 3696366, at *3 (S.D.N.Y. July 31, 2024) (citing cases); *Tomczyk v. N.Y. Unified Court Sys.*, No. 19-CV-2753, 2019 WL 2437849, at *3 (E.D.N.Y. June 10, 2019); *Gravagna v. Eisenpress*, No. 19-CV-0700, 2019 WL 1469289, at *2 (S.D.N.Y. Apr. 2, 2019).

Inasmuch as Plaintiff asks this Court to intervene in his ongoing state court child support proceedings, he has not alleged any facts showing that bad faith, harassment, or irreparable injury that is both serious and immediate has occurred with respect those proceedings. Thus, the

Court also dismisses any claims in which he asks this Court to intervene in his ongoing state court child support proceedings under the *Younger* abstention doctrine.

**D.    The *Rooker-Feldman* doctrine**

Plaintiff alternatively seems to ask this Court to overturn a final order or judgment issued in his concluded New York Family Court child support proceedings in which he was unsuccessful as to the relief he sought in those proceedings. The *Rooker-Feldman* doctrine, however, requires the dismissal of his claims for such relief. Under this doctrine, a federal district court lacks authority to review a final state court order or judgment where a litigant seeks relief that invites the federal district court to reject or overturn such a final state court order or judgment. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291-92 (2005). The *Rooker-Feldman* doctrine "precludes a United States district court from exercising subject-matter jurisdiction." *Id.* at 291. This includes when a litigant seeks relief that invites a federal district court to reject or overturn a final decision of a state court as to a child support. *See Sykes v. Bank of Am.*, 723 F.3d 399, 404 (2d Cir. 2013); *John of the Family Springer v. Stack*, 1:24-CV-6672, 2025 WL 1115022, at *3 (S.D.N.Y. Apr. 14, 2025) ("To the extent Plaintiff seeks review of a state court judgment, ordering him to pay child support, this Court lacks subject matter jurisdiction to hear such a claim, under the *Rooker-Feldman* doctrine. . . . Where a plaintiff challenges 'the validity or enforcement of [a] child support order itself,' the *Rooker-Feldman* doctrine bars such a claim." (quoting *Sykes*, 723 F.3d at 404 (alteration in original))); *Gainyu v. Lopez*, No. 1:19-CV-11605, 2020 WL 1467356, at *3 (S.D.N.Y. Mar. 25, 2020) ("Courts have applied this doctrine to bar claims challenging the enforcement of child support orders by garnishment, seizure, and suspension of a child support debtor's driver's license." (citing cases)); *Davis v. Westchester Family Court*, No. 7:16-CV-9487, 2017 WL 4311039, at *8 (S.D.N.Y. Sept. 26, 2017) ("Courts have repeatedly invoked *Rooker-Feldman* in cases in which plaintiffs

challenge family court decrees setting child support arrears." (internal quotation marks, citation

omitted, citing cases)).

District court review of claims is barred under the *Rooker-Feldman* doctrine when four

requirements are met: (1) the litigant lost in state court; (2) the litigant complains of injuries

caused by a final state court order or judgment; (3) the litigant invites district court review and

rejection of the final state court order or judgment; and (4) the final state court order or judgment

was rendered before the district court proceedings commenced. *Dorce v. City of New York*, 2

F.4th 82, 101 (2d Cir. 2021) (internal quotation marks and citation omitted).

Plaintiff appears to be challenging, in this Court, a final decision of the New York Family

Court, Bronx County, or of another New York State court, with respect to its determination of

his child support obligation, including child support arrears, and he seems to be requesting that

this Court review and overturn that final state court decision. The *Rooker-Feldman* doctrine bars

this Court from granting him such relief. The Court therefore dismisses any of Plaintiff's claims

challenging such final state court determination, under the *Rooker-Feldman* doctrine, for lack of

subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3); *Exxon Mobil Corp.*, 544 U.S. at 291.

## E.    Claims under 42 U.S.C. § 1983 arising from procedural due process violations

The Court understands Plaintiff's amended complaint as also asserting claims, under 42

U.S.C. § 1983, of violations of his right of procedural due process with respect his child support

obligation, including any child support arrears. The right of procedural due process only protects

"against deprivations without due process of law." *Rivera-Powell v. N.Y. City Bd. of Elections*,

470 F.3d 458, 464 (2d Cir. 2006) (internal quotation marks and citation omitted). "The

fundamental requisite of due process of law is the opportunity to be heard . . . at a meaningful

time and in a meaningful manner." *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970) (internal

quotation marks and citations omitted). Determining whether the process provided is adequate

requires a weighing of: (1) the private interest affected; (2) the risk of erroneous deprivation and the probable value of further safeguards; and (3) the governmental interest at issue. *See Rivera-Powell*, 470 F.3d at 466 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

Generally, some kind of predeprivation process must be provided before a person's property rights are infringed upon. *See Hodel v. Va. Surface Mining & Reclamation Ass'n, Inc.*, 452 U.S. 264, 299 (1981); *DiBlasio v. Novello*, 344 F.3d 292, 302 (2d Cir. 2003). Where that person is deprived of a property right because of a random and unauthorized act, rather than through the operation of established state procedures, however, the right of procedural due process is satisfied if the State provides an adequate postdeprivation remedy. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Rivera-Powell*, 470 F.3d at 465.

In the State of New York, a child support debtor is entitled to the administrative remedies outlined in Article 52 of the New York Civil Practice Law and Rules ("Article 52"). For example, when a municipal Support Collection Unit (such as OCSS) issues an execution for enforcement of child support or child support arrears, but there is "an error in the amount" purportedly owed, the debtor may assert that error as a "mistake of fact" and challenge it administratively. *See* N.Y.C.P.L.R. § 5241(a)(8), (e). If the agency does not agree with the debtor's objection, the debtor may seek judicial review of the agency's determination in a proceeding brought in a state court under Article 78 of the New York Civil Practice Law and Rules ("Article 78"). *Battease v. Washington Cnty. Support Collection Unit*, 92 A.D.3d 1037, 1038 (2d Dep't 2012); *see Nemhard v. New York City Office of Child Support*, No. 1:25-CV-0073, 2025 WL 2532521, at *7-8 (S.D.N.Y. Sept. 3, 2025); *Haynie*, 2025 WL 2205987, at *3-4; *Hall v. Child Support Enforcement (CSU)*, No. 1:24-CV-2444, 2024 WL 2784875, at *6 (S.D.N.Y. May 28, 2024); *Phillips v. Wagner*, No. 22-CV-0833, 2022 WL 17406092, at *3 (N.D.N.Y. Nov. 4, 2022), *report &*

*recommendation adopted*, 2022 WL 17403441 (N.D.N.Y. Dec. 2, 2022), *appeal dismissed*, No. 23-68, 2023 WL 4445323 (2d Cir. Apr. 25, 2023); *Keten v. Lopez*, No. 20-CV-1626, 2020 WL 3871209, at *3-4 (S.D.N.Y. July 9, 2020); *Basciano v. Child Support Enf't Mt. Vernon Off.*, No. 19-CV-11797, 2020 WL 550569, at *3-4 (S.D.N.Y. Feb. 4, 2020); *Ford v. Dep't of Soc. Servs.*, No. 1:10-CV-3800, 2011 WL 1458138, at *5 (S.D.N.Y. Mar. 22, 2011).

State law, specifically, Articles 52 and 78, provides procedural due process to child support debtors. If state officials failed to comply with state law, such an omission would constitute a random and unauthorized deprivation of property. That deprivation does not, however, constitute a violation of procedural due process so long as the state provides an adequate postdeprivation remedy.

Plaintiff has not alleged facts showing that he has sought Article 52 administrative review or Article 78 judicial review, or that either remedy is inadequate. In fact, the amended complaint shows that Plaintiff sought at least some sort of judicial review, but that his efforts to challenge his child support obligation, including any child support arrears, was unsuccessful. Without seeking Article 52 administrative review or Article 78 judicial review, Plaintiff cannot assert that he was denied procedural due process. *Hall*, 2024 WL 2784875, at *6; *Basciano*, 2020 WL 550569, at *4. Accordingly, to the extent that Plaintiff asserts claims under Section 1983 that his right of procedural due process has been violated with regard to his child support obligation, including child support arrears, the Court dismisses such claims for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). In light of Plaintiff's *pro se* status, however, the Court grants Plaintiff leave to replead these claims, in a second amended complaint, to allege facts sufficient to state a claim of a violation of his right of procedural due process.

**F.      Claims against OCSS**

Plaintiff names OCSS as a defendant, but the Court must dismiss his claims against it

because, as an agency of the City of New York, OCSS is not an entity that can be sued. N.Y.

City Charter ch. 17, § 396 ("[A]ll actions and proceedings for the recovery of penalties for the

violation of any law shall be brought in the name of the city of New York and not in that of any

agency, except where otherwise provided by law."); *Edwards v. Arocho*, 125 F.4th 336, 354 (2d

Cir. 2024) ("A plaintiff cannot bring a claim against a municipal agency that does not have the

capacity to be sued under *its municipal charter*." (emphasis in original)); *Jenkins v. City of New*

*York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007); *Cora v. Wright*, No. 1:24-CV-0263, 2024 WL

450247, at *4 (S.D.N.Y. Feb. 5, 2024) (OCSS is not a suable entity); *see also Emerson v. City of*

*New York*, 740 F. Supp. 2d 385, 395 (S.D.N.Y. 2010) ("[A] plaintiff is generally prohibited from

suing a municipal agency."). The Court therefore dismisses Plaintiff's claims against OCSS for

failure to state a claim on which relief may be granted. *See* § 1915(e)(2)(B)(ii).

Inasmuch as Plaintiff's amended complaint can be construed as asserting claims, under

Section 1983, against the City of New York, the Court dismisses those claims as well. When a

plaintiff sues a municipality, like the City of New York, under Section 1983, it is not enough for

the plaintiff to allege that one of the municipality's employees or agents engaged in some

wrongdoing. The plaintiff must show that the municipality itself caused the violation of the

plaintiff's rights. *See Connick v. Thompson*, 563 U.S. 51, 60 (2011) ("A municipality or other

local government may be liable under this section [1983] if the governmental body itself

'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such

deprivation." (quoting *Monell v. Dept of Soc. Servs.*, 436 U.S. 658, 692 (1978))); *Cash v. Cnty.*

*of Erie*, 654 F.3d 324, 333 (2d Cir. 2011). In other words, to state a claim under Section 1983

against a municipality, the plaintiff must allege facts showing: (1) the existence of a municipal

policy, custom, or practice, and; (2) that the policy, custom, or practice caused the violation of the plaintiff's constitutional rights. *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012); *see Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997) (internal citations omitted).

Plaintiff alleges no facts showing that a policy, custom, or practice of the City of New York contributed to the violation of his federal constitutional rights. The Court therefore dismisses Plaintiff's claims against the City of New York for failure to state a claim on which relief may be granted. *See* § 1915(e)(2)(B)(ii). The Court, however, grants Plaintiff leave to replead these claims in a second amended complaint in which he names the City of New York (not OCSS or any other agency of the City of New York) as a defendant, and in which he alleges facts sufficient to state a claim under Section 1983 against the City of New York.

## G.    Claims under Section 1983 against the individual unidentified defendants

The Court must dismiss Plaintiff's claims under Section 1983 against the unidentified individual defendants. To state a claim under Section 1983 against an individual state actor, a plaintiff must allege facts showing that defendant's direct and personal involvement in the alleged constitutional deprivation. *See Spavone v. N.Y. State Dep't of Corr. Serv.*, 719 F.3d 127, 135 (2d Cir. 2013) ("It is well settled in this Circuit that personal involvement of defendants in the alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." (internal quotation marks omitted)). A defendant may not be held liable under Section 1983 solely because that defendant employs or supervises a person who violated the plaintiff's rights. *See Iqbal*, 556 U.S. at 676 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."). Rather, "[t]o hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying

constitutional violation directly against the official." *Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020).

Plaintiff alleges nothing about the unidentified individual defendants or how they were directly and personally involved in any of the alleged violations of his federal constitutional rights. The Court therefore dismisses Plaintiff's claims under Section 1983 against the unidentified individual defendants for failure to state a claim on which relief may be granted. *See* § 1915(e)(2)(B)(ii). The grants Plaintiff leave to replead his claims, under Section 1983, against individual state actors in a second amended complaint in which he names, as defendants, the individual state actors who were directly and personally involved in the violations of his federal constitutional rights, and alleges facts showing their direct and personal involvement in those violations.

## H.    Claims under the FCRA

The Court understands Plaintiff's amended complaint as also asserting claims under the FCRA against the defendants, arising from their furnishing of his child support debt information to consumer reporting agencies. Congress enacted the FRCRA to ensure that consumer reporting agencies follow fair and equitable procedures in "regard to the confidentiality, accuracy, relevancy, and proper utilization of consumer credit information." 15 U.S.C. § 1681(b). The FCRA imposes certain duties on entities furnishing information to consumer reporting agencies. 15 U.S.C. § 1681s-2.[3] Section 1681s-2(a) states that persons "shall not furnish any information

---

[3] The term "furnishers of information" is not defined in the statute, *see* 15 U.S.C. § 1681a, but it has been interpreted to mean "entities that transmit, to credit reporting agencies, information relating to debts owed by consumers," *Kane v. Guaranty Residential Lending, Inc.*, No. 04-CV-4847, 2005 WL 1153623, at *3 (E.D.N.Y. May 16, 2005). For the purpose of this order, the Court understands that Plaintiff alleges, in his amended complaint, that the defendants furnished inaccurate information about his child support debt to consumer reporting agencies.

relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate." 15 U.S.C. § 1681s–2(a)(1)(A). But "there is no private cause of action for violations of Section 1681s–2(a)." *Longman v. Wachovia Bank, N.A.*, 702 F.3d 148, 151 (2d Cir. 2012). This is because this subsection of the FCRA "shall be enforced exclusively . . . by the Federal agencies and officials and the State officials identified in section 1681s of this title." 15 U.S.C. § 1681s–2(d); *Redhead v. Winston & Winston, P.C.*, No. 1:01-CV-114755, 2002 WL 31106934, at *4 (S.D.N.Y. Sept. 20, 2002) ("There is no private cause of action under Section 1681s-2(a), for the FCRA limits the enforcement of this subsection to government agencies and officials.").

Thus, "[e]ven if Plaintiff's . . . [amended complaint] is construed as . . . [asserting claims] under [the FCRA], the FCRA does not provide a private cause of action for claims involving the furnishing of inaccurate information to credit reporting agencies." *Deutsch v. JP Morgan Chase & Co.*, No. 1:18-CV-11655, 2019 WL 8405264, at *1 (S.D.N.Y. Dec. 11, 2019). Accordingly. to the extent that Plaintiff asserts claims under the FCRA arising from the defendants' alleged furnishing of inaccurate child support debt information to consumer reporting agencies, the Court must dismiss such claims for failure to state a claim on which relief may be granted, *see* § 1915(e)(2)(B)(ii), without leave to replead.

## I.    Leave to amend is granted

Plaintiff proceeds in this matter without the benefit of an attorney. Federal district courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011). Indeed, the United States Court of Appeals for the Second Circuit has cautioned that district courts "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be

stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). Because Plaintiff may be able to allege additional facts to state a valid claim under 42 U.S.C. § 1983, the Court grants Plaintiff 30 days' leave to replead those claims specified above that the Court has given him leave to replead. Plaintiff is not permitted to raise those claims that the Court has dismissed above without granting him leave to replead.

If Plaintiff does not file an amended complaint within the time allowed, the Court will direct the Clerk of Court to enter a judgment dismissing this action for the reasons set forth above. The additional effect of that judgment will be that the Court alternatively declines to consider, under its supplemental jurisdiction, Plaintiff's claims under state law. *See* 28 U.S.C. § 1367(c)(3).

## CONCLUSION

While it is unnecessary to do so, the Court grants Plaintiff's motion for leave to file an amended complaint. (ECF 6.) The Court directs the Clerk of Court to detach Plaintiff's proposed amended complaint from that motion (*id*. at 3-9) and to file it in this action as Plaintiff's amended complaint. The Court also directs the Clerk of Court to detach from that motion Plaintiff's "Motion for Audit and Restitution of Seized Funds" (*id.* at 10-11) and to file it in this action as a separate motion. For the reasons discussed in this order, the Court denies that motion.

The Court dismisses this action for the reasons set forth above, but grants Plaintiff's 30 days' leave to replead certain claims, in an amended complaint, as specified above. If Plaintiff does not file an amended complaint within the time allowed, the Court will direct the Clerk of Court to enter a judgment dismissing this action for the reasons set forth above. The additional effect of that judgment will be that the Court alternatively declines to consider, under its supplemental jurisdiction, Plaintiff's claims under state law. *See* 28 U.S.C. § 1367(c)(3).

The Court directs the Clerk of Court to hold this matter open on the docket until a civil judgment is entered.

SO ORDERED.

Dated:    September 30, 2025
          New York, New York

_____
Louis L. Stanton
U.S.D.J.